Alex D. Kruzyk (*pro hac vice*)
akruzyk@pkglegal.com
Bryan A. Giribaldo (*pro hac vice*)
bgiribaldo@pkglegal.com
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed Classes*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Gina Johnson, on behalf of herself and all others similarly situated, | Case No. 2:25-cv-04981-DWL |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| HomeLight, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## Nature of this Action

1. Gina Johnson ("Plaintiff"), individually and on behalf of all others similarly situated, bring this class action against HomeLight, Inc. ("Defendant") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing call or text message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

## Parties

4. Plaintiff is a natural person who, at all relevant times, resided in Anza, California.

5. Defendant is a Delaware corporation that runs a real estate marketing and lead generation business headquartered in Scottsdale, Arizona.

6. Defendant is also a licensed real estate corporation in the State of Arizona, with license number CO701546000, and is associated with Marcia Bradley, an Arizona-based Designated Broker and an employee of Defendant, under license number BR634275000.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(1)(a)(iii), and 28 U.S.C. § 1331.

8. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as

Defendant resides in this district.

**Factual Allegations**

9. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(951) 760-XXXX.

10. Plaintiff uses her cellular telephone as her personal residential telephone number.

11. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

12. Plaintiff registered her cellular telephone number with the DNC Registry on July 30, 2024, and has maintained that registration through the present date.

13. Beginning in November 2025 and continuing through the present, Plaintiff began receiving text messages on her cellular telephone from (772) 236-9486, touting interest in Plaintiff's real estate, along with "offer[s] for your home."

14. For example, Plaintiff received at least three text messages from (772) 236-9486:







15. Plaintiff did not recognize the sender of these text messages.

16. Each of the URLs in Defendant's text messages directed to a website purporting to be run by "Liberty Home Report," which claims to be a real estate appraisal service responsible for "20,000+ Appraisals completed every month."[1]

17. The website further disclosed that "Liberty Home Report is a Delaware corporation with a business office located at 6358 Delmar Blvd suite 300. St. Louis MO 63130 and a licensed real estate brokerage in MO, License # 2017042277."[2]

18. However, there is no "Liberty Home Report" registered to do business in Delaware (or Missouri, or California), and upon information and good faith belief, is

---

[1] https://try.libertyhomereport.com/ (last visited November 20, 2025). As explained below, the "last visited" timestamps are critically relevant here, as Defendant, or its affiliates, appeared to substantially modify their websites—and deactivate portions of them—following Plaintiff's filing of her initial lawsuit discussed *infra*.

[2] https://try.libertyhomereport.com/terms-of-use (last visited November 20, 2025).

instead a fictitious entity and front for the telemarketing operations of Defendant.

19. The address and brokerage license number disclosed therein is associated with Clever Real Estate, Inc. ("Clever").

20. As detailed *infra* ¶¶ 42-50, however, Liberty Home Report appeared to falsely represent itself to be affiliated with (or run by) Clever.

21. Plaintiff is not, and was not, interested in any appraisals for her home, and did not seek for Defendant (or any other entity) to appraise her property.

22. Upon engaging with the website—via undersigned counsel entering his office address—and proceeding to "get estimate," the URL for the website suddenly changes to "www.homelight.com," and then seeks for the user to input information about their home, in order to then refer the user to a network of affiliated real estate agents for conventional real estate representation:[3]




[3] https://www.homelight.com/simple-sale/quiz?address=7500%20Rialto%20Boulevard%2C%20Austin%2C%20Texas%2078735%2C%20United%20States&a=NzUwMCBSaWFsdG8gQm91bGV2YXJkLCBBdXN0aW4sIFRleGFzIDc4NzM1LCBVbml0ZWQgU3RhdGVz&e=Z2FieWFpcmVAZ21haWwuY29t&p=OTU2MjEyNjE2MQ==&n=RG9yaWEgUmVzZW5kZXo=#/qaas=11/ (last visited December 17, 2025).




23. The Terms of Service referenced therein detail the nature of HomeLight's offerings:

> Matchmaking is the core of what we do for real estate. When the time is right, we make a professional introduction between you and one of our Real Estate partners. The service that we provide to both buyers and sellers of real estate and real estate professionals is governed by a few terms that are outlined below.
>
> Because we are an online service, we don't ask you to deal with and physically sign a lengthy contract. The terms of our contract with you are set forth below in plain language. If you don't agree with the terms, then we ask you please to leave this Web site and not use our services. If you do use this Web site, then that action will serve as your agreement to be bound by our terms of service ("Terms of Service" or "Agreement").
>
> HomeLight, Inc. ("HomeLight") is operated in compliance with all state and federal housing laws.
>
> **Terms for Broker and Agents**

Real estate professionals who are involved with and use our Web site must agree with the following terms:

1. You grant HomeLight.com permission to display on our Web site and elsewhere information that we have gathered or you have supplied related to any of the real estate transactions that you have handled as a real estate professional. This information helps your potential clients better understand your specialties.
2. Maintaining a profile on HomeLight is completely free. However, if you choose to accept Referrals from HomeLight, and if you subsequently handle a real estate transaction for this Referral, then you agree to pay us a Referral Fee that will be a percentage of the gross commission you earn. This is how we earn money and is what allows us to continue to provide our services to you. Your acceptance of any Referral from HomeLight constitutes your express and ongoing assent to the terms of the Referral Agreement, as may be amended from time to time.

. . .

**Terms for Buyers and Sellers**
All non-real estate professionals (including prospective Buyers and Sellers and their representatives) who are involved with and use our Web site must agree with the following terms:
1. When the time is right, we may make a professional introduction between you and one of our partners, including a real estate agent or one of our real estate investment partners. Of course, this introduction involves sharing the contact information of each party with the other. When you submit information to HomeLight.com for a request, you authorize us to use and provide this information to make an introduction. By providing this information to us, you consent to being contacted by us and by our partners via phone, email, mail or other reasonable means.
2. For us to help you, we need you to provide information that is accurate and complete, especially your contact information so that our Real Estate partners can contact you quickly and efficiently. We reserve the right to suspend or terminate access to anyone who supplies information that is inaccurate or misleading.
3. YOU UNDERSTAND THAT WHILE HOMELIGHT MAY REFER REAL ESTATE PROFESSIONALS, ANY REAL ESTATE TRANSACTIONS WILL BE CONDUCTED BY LOCAL REAL ESTATE PROFESSIONALS OR INVESTORS THAT HAVE BEEN REFERRED TO YOU AND ARE NOT AFFILIATED WITH HOMELIGHT, INC. WE ARE NOT PARTY TO NOR AWARE OF ANY TERMS OF ANY TRANSACTION NEGOTIATED BY THESE REAL ESTATE

PROFESSIONALS. HOMELIGHT DOES NOT ENDORSE, RECOMMEND, OR OTHERWISE KNOW THE TERMS OF ANY AGREEMENT BETWEEN YOU AND A REAL ESTATE PROFESSIONAL.

4. YOU UNDERSTAND THAT WHILE WE MAY MAKE AN INTRODUCTION TO A THIRD PARTY REAL ESTATE PROFESSIONAL, WITH WHOM YOU MAY OR MAY NOT CHOOSE TO PURSUE A POTENTIAL BUSINESS RELATIONSHIP, HOMELIGHT IS NOT YOUR AGENT, DOES NOT REPRESENT YOU, AND WILL NOT BE PERFORMING ANY REAL ESTATE BROKERAGE SERVICES ON YOUR BEHALF BEYOND INTRODUCING YOU TO QUALIFIED REAL ESTATE PROFESSIONALS.

5. YOU UNDERSTAND THAT FOR OUR INTRODUCTION SERVICES WE MAY RECEIVE payment (a Referral Fee) that may be a percentage of the commission received by the professionals involved in the real estate transaction. There is no charge to you. Any payment is due based on a separate agreement between us and the professional involved. Your use of our services constitutes your acknowledgment of, and agreement to, this compensation arrangement.[4]

24. In other words, Defendant partners with real estate firms and agents to solicit interested consumer leads for real estate representation as either buyers or sellers, and explicitly disclaims itself as a party to any potential real estate transaction.

25. When called, the phone number referenced in that page, (866) 627-3398, presents an IVR that states as follows: "Thank you for calling HomeLight. If you are looking to rent a home, please press 1. If you are looking to buy a home, please press 2. If you are looking to sell a home, please press 3. . . ."

26. Additionally, the URLs in Defendant's text messages provide a separate telephone number to contact: (903) 300-5827.

27. That same phone number is used on other, materially identical websites, including https://www.simplesale.com/.

28. That website includes the following disclosure: "Simple Sale is a property

---

[4] https://www.homelight.com/terms (last visited December 17, 2025) (emphasis in original).

of Simple Sale, Inc. Simple Sale, Inc. is a licensed real estate broker in the State of California, DRE license # 01900940."

29. However, like Liberty Home Report, "Simple Sale, Inc." *does not appear to exist*.

30. Rather, California license # 01900940 is registered to Defendant, and the website further discloses an address of "100 California Street, 8th floor. San Francisco, CA," which was Defendant's prior headquarters before it moved its headquarters to Arizona, but is still utilized as a corporate office for Defendant.

31. Therefore, upon information and belief, Defendant is a real estate lead generator that cold-calls consumers for the purpose of identifying leads interested in real estate representation, which it thereafter funnels to their real estate network for subsequent real estate representation, all the while disclaiming that it is a party to whatever real estate transaction arises out of the referral.

32. In exchange for that referral, Defendant receives and collects referral fees from its realtor clients as a percentage of the realtor's ultimate commission fee.

33. More specifically, as its core business model, Defendant generates real estate leads for its affiliates, and mandates that those agents or brokerages pay referral fees to Defendant of 33% of any commission charged by that agent.[5]

34. In that website page, Defendant rather brazenly explains why it was "increasing its referral fee" from 25% to 33%: "We are launching a *new text-first experience* early next year aimed at helping improve your contact rates and engagement with interested buyers/sellers." (emphasis added).

35. Thus, Defendant receives compensation from payments made by consumers who engage them—or their affiliates—for real estate services.

36. Given Defendant's website representations and its core business model, Defendant's text messages to Ms. Johnson were not to appraise her property, nor to make

---

[5] https://help.homelight.com/hc/en-us/articles/9123252350999-referral-agreement-changes-faq (last visited December 17, 2025).

an offer to directly purchase Plaintiff's property; rather, it was to solicit Plaintiff to provide information so that Defendant could refer Plaintiff to Defendant's network of real estate professionals.

37. In other words, Defendant's telemarketing campaign seeks to convince consumers to either: (1) pursue real estate transactions that they were not contemplating, utilizing Defendant to connect them with someone from Defendant's network of real estate professionals; or (2) convince consumers to utilize Defendant's network of real estate professionals in carrying out already-contemplated real estate transactions.

38. Therefore, Defendant appears to be engaging in a cold-call telemarketing campaign directed to consumers for the purposes of identifying, and then selling, leads for real estate representation to real estate agents or brokerages, and with the consumer ultimately paying commissions to the real estate agent associated with that representation.

39. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id.* at 3793-94.

40. In other words, the FCC has expressly declared that conduct materially similar to Defendant's conduct qualifies as a regulated telephone solicitation, which accordingly means that Defendant must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

41. As a result, Defendant's conduct—contacting known or suspected homeowners by telephone call and text message to offer (or arrange for another to offer) representation to the homeowner as a buyer's or seller's agent, in exchange for commission—fits squarely within the TCPA's definition of telemarketing or solicitation, as reinforced by the FCC.

42. Online complaints reinforce the widespread nature of Defendant's cold-call telemarketing campaign, with consumers complaining of Defendant on the BBB website as follows: [6]

- "I have received calls for a "********* ********" about a home I do not even own. I have received a slew of these calls and am being harassed. I am not the individual in question, nor did I ask for my phone number to be shared. Please cease and desist all calls to my phone."

- "[I] have never signed up for this website, and now im getting calls every day from brokers and emails. I have requested my cell, email and address to be removed from their website and to remove the address listed. i cannot reach anyone. It needs to be removed including the address, cell, information, i never signed up for this. REMOVE ME FROM THIS WEBSITE including personal information, address, cell, i never signed up for this contact."

- "I have been receiving over 30 texts, emails and phone calls from agents of Homelight for over two weeks. I never signed up with this agency and do not want to sell my home. I have emailed and texted Homelight asking them to stop this harassment, but the calls have not stopped. I was in Europe for part of this time which meant that the texts and phone calls were coming in the middle of the night as well due to the time change. Most of the contacts are addressed to "Dick" and no one has ever called me ****, so it is clear that this was not started by me. Is there no way to determine how this started? Are there no quality controls? Please stop the harassment now."

- "Beginning at 5:17pm on Friday, July 7, 2023, I began receiving phone calls, emails, and text messages from real estate agents from HomeLight looking to help me sell my home. I never signed up for HomeLights services. I dont even own the house theyre telling me Im trying to sell."

---

[6] https://www.bbb.org/us/az/scottsdale/profile/real-estate/homelight-inc-1126-1000064561/complaints (last visited December 17, 2025).

43. Other consumers have shared anecdotes on their dealings with Defendant *when they provide consent*, noting that if a consumer requested an offer from Defendant, they would instead be inundated with calls from real estate agents seeking to represent them in exchange for commission (1/3 of which would go to Defendant):[7]

- "anyone seeing this don't make the mistake in contacting them. It says a cash offer but all they offered me was about 500 calls from different realtors they sold my phone number and email to. There was no cash offer involved. They are totally misleading."
    - With a response: "Same here. They just send your info out to realtors that offer a traditional sale."
- "I got absolutely bombarded with calls. And we have a realtor that my family has used between the 5 of us probably 12 to 15 times buying and selling. I just wanted to see what the cash offer would be for kicks. So after about 50 calls over like 6 months it finally came time to try and sell my house and I told the lady from some office that called we had a family realtor we have used forever and I would be using her. So she asked who it was and I told her. Didn't see any reason not too! So I got a call today from the family realtor woman wanting to know exactly what happened bc she got a call today from Homelight informing her that she had been referred to me by them and bc Of that she would owe them 35% of the commission for the sale of my house."
- "They say they're going to give you an investor who never contacts you all you get are real estate agents I'm waiting for an investor to email me nothing absolutely nothing I truly do not understand why they would waste my time this way they keep giving you a name of another realtor. Oh my gosh unbelievable."

44. Another real estate website noted, *again in the context where the consumer gave consent to be contacted*, that "[s]ome people who requested cash offers through HomeLight Simple Sale were especially frustrated that HomeLight failed to provide any

---

7 https://www.reddit.com/r/RealEstate/comments/1ad0ksw/has_anyone_used_homelight_simple_sale_to_get_a/ (last visited December 17, 2025).

actual cash offers. Instead, they were also inundated with calls from traditional realtors," such as:[8]

- Homelight pulls a bait and switch farming out your phone and email to realtors that solicit you. I searched online how to for sale by owner and HL popped up. 'Sell your home quick for a cash offer'. I provided my info and did not get any kind of offer from them. Instead received many phone calls and a few emails from realtors that wanted to list my home.

- I request an Offer for their Simple Sale cash buy option, and specifically stated that I did not want to be contacted by an agent... After entering my information they immediately said no investors were available in my area and sent my contact info out to several realtors. They are not to be trusted with your information. This is just a bait and switch referral operation.

45. In light of the foregoing, Plaintiff previously filed a lawsuit against both Defendant and Clever in the Eastern District of Missouri based on materially similar allegations. *See Johnson v. Clever Real Estate, Inc. et al*, Case No. 4:25-cv-01736-JMD (E.D. Mo.).

46. However, prior to even serving Defendant or Clever, Clever's in-house counsel contacted undersigned counsel and detailed how Clever did not have anything to do with Defendant's outbound telemarketing campaign, nor any of the websites at-issue, and instead believed that Defendant's websites scrubbed and copied disclosures made on Clever's own website, erroneously including Clever's contact information in the process. *See generally* Exhibit A.

47. While investigating and verifying Clever's assertions, Plaintiff uncovered further information, which stemmed from the fact that the URL in the text messages directed to Plaintiff changed, instead directing to a defunct link (which is truncated here, as it contains personally identifying information tied to Plaintiff): go.americanendeavorrealty.com/aff_ad?campaign_id=292 . . .[.]

48. American Endeavor Realty's website, as with Defendant's other websites,

---

[8] https://www.realestatewitch.com/homelight-reviews/#customer-reviews (last visited December 17, 2025).

again lists a seemingly fake company as the owner—"American Endeavor Realty, Inc."—but provides Defendant's address and phone number as contact information.

49. The registration page of that website—provided through the Internet Corporation for Assigned Names and Numbers ("ICANN") WHOIS registry lookup service—yielded interesting results:

**Contact Information**

**Registrant:**

**Handle:** americanendeavorrealtycom-reg

**Name:** Ismaeel Yuan

**Phone:** tel:+1.4154126965

**Kind:** individual

**Mailing Address:** 548 MArketing St #93725, California, California, 94016

**ISO-3166 Code:** US

**Contact Uri:** mailto:w@revcloud.com

**Technical:**

**Handle:** americanendeavorrealtycom-tech

**Name:** Ismaeel Yuan

**Phone:** tel:+1.4154126965

**Kind:** individual

**Mailing Address:** 548 MArketing St #93725, California, California, 94016

**ISO-3166 Code:** US

**Contact Uri:** mailto:w@revcloud.com

**Registrar Information**

**Name:** GoDaddy.com, LLC

50. The address disclosed therein is plainly fabricated, as there is no "Marketing Street" in "California, California."

51. However, the email address provided references "revcloud," which upon information and belief, is a lead generation service that is primarily based in Pakistan, and which is owned and operated by William Rainey, who is also a "Product and Growth

Lead" employed by Defendant.[9]

52. This "revcloud" service touts that it offers a "Lead gen team optimized to dial the most valuable and likely to convert prospects based on a customized AI model,"[10] while touting its services offering a superior cold-calling platform.[11]

53. As a result of these disclosures—and because Plaintiff's primary basis for filing in the Eastern District of Missouri was Defendant's false representation that the messages were coming from Clever in Missouri—Plaintiff dismissed that matter without prejudice, and now brings this complaint.

54. Defendant's website details the service offerings accompanying its telemarketing communications, in line with its pseudonym websites:[12]




[9] https://www.linkedin.com/in/billraney/ (last visited December 17, 2025).
[10] https://revcloud.com/ (last visited December 17, 2025).
[11] https://revcloud.com/appointment-setting/ (last visited December 17, 2025).
[12] https://www.homelight.com/ (last visited December 29, 2025).

HOW IT WORKS

## Exploring your options is free and easy

Buy | Sell | Buy & Sell

1

### Find the best agent

Need an agent? Great! We can help you find the perfect real estate agent based on local market data to help you achieve your goals.

2

### Secure the right mortgage

Work with your new agent to agree upon a budget using our home affordability calculator then get connected with local lenders. You can even apply for a HomeLight Home Loan in certain states in just 30 minutes.

3

### Find your dream home

Find the perfect home with HomeLight's home search. We'll keep you up to date when new listings come on the market so you can make the first move.

4

### Compete and win the home

Find the home you love and get your offer accepted. Our agents are experts in their local market, so they'll guide you through the entire bidding process so you get the best deal for your money.

HOW IT WORKS

## Exploring your options is free and easy

Buy | Sell | Buy & Sell

1

### See what your home is worth

Use our free home value calculator to quickly see your home's current value.

2

### Find the best listing agent

Need an agent? Great! We can help you find the perfect real estate agent in your area to help you sell your home.

3

### Sell your home fast and for the right price

Either through a traditional listing or by working with an all-cash investor, HomeLight and its agents will recommend various selling options so you can achieve your goals.

4

### Set a closing date and move

HomeLight's top agents will advise you through transaction close. Even after you have accepted a bid, your agent will guide you through the final paperwork to ensure a seamless home selling experience.

55. To be sure, Plaintiff did not give Defendant prior express consent or prior express written consent to send telemarketing communications to her cellular telephone number.

56. Plaintiff did not give Defendant prior express invitation or permission to send advertisement or marketing communications to her cellular telephone number.

57. Defendant sent the communications at issue for non-emergency purposes.

58. Upon information and belief, Defendant sent the communications at issue voluntarily.

59. The purpose of the communications at issue was to advertise and to market Defendant's business or services, or the business or services of its real estate agent/broker clients, partners, or affiliates.

60. To the extent that Defendant were to imply that the telephone calls and text messages were merely "free offers" tied to Plaintiff's property, that would be both false and misleading, as the representation of an "offer" was merely a pretext to get Plaintiff—and any other person who got similar messages—to click the link or submit their contact information for Defendant to then distribute to its network of real estate agents and brokers, with the ultimate goal of having those agents or brokers providing representation in a real estate agent to Plaintiff, in exchange for payment of a commission, one third of which would be paid to Defendant.

61. Plaintiff suffered actual harm as a result of the communications at-issue in that she suffered an invasion of privacy, an intrusion into their lives, and a private nuisance.

62. Moreover, Plaintiff was additionally annoyed because Defendant's text messages frustrated the very purpose for her signing up for the DNC Registry, as she signed up in a specific effort to stop the various text messages she was receiving from senders like (or including) Defendant.

63. Upon information and belief, Defendant knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

## Class Action Allegations

64. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom HomeLight, Inc. sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting HomeLight, Inc.'s, or its business partners', goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before HomeLight, Inc. sent, or caused to be sent, at least two of the telephone calls or text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

> All persons and entities throughout the United States (1) to whom HomeLight, Inc. sent, or caused to be sent, more than one telephone call or text message within a 12-month period, promoting HomeLight, Inc.'s, or its business partners', goods or services, (2) where the subject calls or text messages did not state the name of the individual caller, the name of HomeLight, Inc., and a telephone number or address at which HomeLight, Inc. may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

65. Excluded from the Classes are Defendant, its officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

66. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

67. The exact number of members of the Classes are unknown to Plaintiff at this time and can be determined only through appropriate discovery.

68. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

69. In addition, the members of the Classes are identifiable in that, upon

information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties.

70. Plaintiff's claims are typical of the claims of the members of the Classes.

71. As it did for all members of the Classes, Defendant delivered solicitation messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

72. Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendant.

73. Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

74. Plaintiff suffered the same injuries as the members of the Classes.

75. Plaintiff will fairly and adequately protect the interests of the members of the Classes.

76. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

77. Plaintiff will vigorously pursue the claims of the members of the Classes.

78. Plaintiff has retained counsel experienced and competent in class action litigation.

79. Plaintiff's counsel will vigorously pursue this matter.

80. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

81. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

82. Issues of law and fact common to all members of the Classes are:

a. Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing telephone calls or text messages;

b. For the Federal Do-Not-Call Registry Class, Defendant's practice of delivering telephone calls or text messages, for solicitation purposes,

to telephone numbers already registered on the DNC Registry for more than thirty days;

c. For the Sender Identification Class, whether Defendant disclosed required information in its telemarketing calls and text messages in compliance with 47 C.F.R. § 64.1200(d)(4);

d. Defendant's association with "revcloud" and the websites at issue;

e. The reason why Defendant obfuscates its identity in its communications and related websites, and whether Defendant did so willfully and intentionally;

f. Defendant's violations of the TCPA; and

g. The availability and amount of statutory penalties.

83. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

84. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

85. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

86. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

87. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.

88. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

89. The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

90. There will be no extraordinary difficulty in the management of this action as a class action.

91. Defendant acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

92. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-91.

93. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

94. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

95. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

96. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

97. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Federal Do-Not-Call Registry Class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

98. Defendant violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation telephone call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

99. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

100. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-91.

101. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

102. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

103. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

104. Defendant violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Sender Identification Class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

105. Defendant therefore violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiff as a class representative of both the Federal Do-Not-Call Registry Class and the Sender Identification Class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiff's counsel as class counsel of both the Federal Do-Not-Call Registry Class and the Sender Identification Class under Federal Rule of Civil Procedure 23;

d. Adjudging and declaring that Defendant violated 47 U.S.C. § 227(c)(5);

e. Enjoining Defendant from continuing their violative behavior, including continuing to deliver solicitation telephone calls and text

messages to telephone numbers registered with the DNC Registry for at least thirty days;

f. Awarding Plaintiff and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g. Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h. Awarding Plaintiff and members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: March 6, 2026.

By: */s/ Alex D. Kruzyk*
Alex D. Kruzyk (*pro hac vice*)
akruzyk@pkglegal.com
Bryan A. Giribaldo (*pro hac vice*)
bgiribaldo@pkglegal.com
**Pardell, Kruzyk & Giribaldo, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444

*Counsel for Plaintiff and the proposed Classes*